**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

ANTHONY L. HICKS,

Plaintiff,

v.

VICTORIA KUHN, ESQ., *et al.*,

Defendants.

Civil Action No. 23-2709 (BRM) (JRA)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants Victoria Kuhn, Esq., Patricia McGill, and Marc Sim seeking to dismiss Anthony L. Hick's ("Plaintiff") claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 29.) Plaintiff filed his Opposition to Defendants' Motion. (ECF Nos. 32, 33.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, the Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I. BACKGROUND[1]

In March 2023, Plaintiff, a prisoner confined at Northern State prison, filed his initial Complaint in Superior Court of New Jersey, Law Division, Essex County alleging claims against the following defendants: (1) Victoria Kuhn, Esq. ("Kuhn"), Commissioner of New Jersey Department of Corrections ("DOC"); (2) Patricia McGill ("McGill"), Administrator of Northern

[1] For the purposes of this Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

State Prison; (3) Marc Sim ("Sim") Associate Administrator of Northern State Prison; (4) New Jersey Department of Corrections, and (5) Northern State Prison. (*See* ECF No. 1-1.) In May 2023, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF No. 1.) On August 4, 2023, Plaintiff filed the operative two-count Amended Complaint. (ECF No. 7.) In Counts I and II, brought pursuant to 42 U.S.C. § 1983 and New Jersey Civil Rights Act, Plaintiff alleges that his substantive and procedural due process rights were violated. (*See* ECF No. 7 at 18–21.)

In the Amended Complaint, Plaintiff alleges on February 15, 2023, he was "unlawfully sanctioned to 45 days loss of institutional kiosk, telephone, Jpay player (Tablet), and congregate time out of the cell by [D]efendant Sim." (*Id.* at 4.) Plaintiff alleges the sanctions imposed by Defendant Sim "were not based on any charges or finding of guilt" and the allegations were "outright[ly] false and made up without any basis in fact." (*Id.* at 5.) Plaintiff submitted an inquiry in February 2023 stating that he received a "memo" regarding his failure to "step to the rear of this cell to allow a roommate to enter" and as a result he was sanctioned with the lose of congregational, phone, and kiosk time. (*Id.*) In the inquiry, Plaintiff challenged the allegation and indicated that he "had no opportunity to express the fallacy of this allegation before this action was taken." (*Id.*) Jacqueline Rivera responded to the inquiry, stating "per NJDOC Policy, Inmate Remedy System cannot be used for matters related to DOC disciplinary charges or DOC disciplinary appeals." (*Id.*) Plaintiff was instructed to "follow the appeal process that is in place." (*Id.*) In the Amended Complaint, Plaintiff submits that he was unable to follow the disciplinary appeal process because this action was "not part of the disciplinary process." (*Id.* at 6.)

On February 20, 2023, Plaintiff wrote administration and the Commissioner's office, informing them that "he had just received a sanction for something that never happened and that

he never had the opportunity to challenge it by presenting his side and he never saw the person that imposed the sanction. (*Id.*) Plaintiff was again instructed that he could not use the Inmate Remedy System to address matters related to DOC disciplinary charges. (*Id.*) Plaintiff appealed that response stating:

> I never received a DCO disciplinary charge, had any kind of hearing, never even seen any person who could [have] imposed a sanction or therefore had any opportunity to appeal because I was given a sanction in a process that adhere to ZERO due process.

(*Id.*) The Commissioner's Office responded that matters of this nature are not addressed via Jpay kiosk. (*Id.* at 7.) Plaintiff submits that he filed a grievance noting "there is no process to appeal this sanction . . . as there was no DOC disciplinary charge or hearing." (*Id.*) On March 13, 2023, Plaintiff received the following response:

> Per 10A:4-5.1, administrative action may be taken upon recommendation by the Administrator or designee, in addition to sanctions. As you are currently housed in RHU serving a disciplinary sanction, your recent behavior prompted an administrative review. Your privileges will resume 3/31/23.

(*Id.* at 8.) Plaintiff appealed and Defendant McGill responded "your appeal has been received and the response noted was deemed to be appropriate. Case closed. Thank you for your concern." (*Id.*) Plaintiff again wrote to the Commissioner's office, and Mario Viera of Northern State prison responded. (*Id.* at 9.)

Plaintiff filed several more inquires and grievances regarding this matter. Plaintiff submits that the Administrations reliance on "N.J.A.C. 10A:4-5.1(t) to provide for the authority to sanction Plaintiff for alleged misconduct is misplaced here because Plaintiff had already been sanctioned by the [Disciplinary Hearing Officer] for a disciplinary matter and he was not issued 'additional sanctions' in accordance to N.J.A.C. 10A:4-5.1(t) at the time the sanctions were imposed." (*Id.* at 11.) Plaintiff submits that he had completed the appeal process, and his earlier disciplinary matter

was final after that initial sanction and appeal and N.J.A.C. 10A:4-5.1(t) does not permit "administrative review" and reopening of a disciplinary matter to add additional sanction "based on new, uncharged, allegations." (*Id.*)

Defendants Kuhn, McGill, and Sim (collectively "Moving Defendants") filed the instant motion to dismiss the Amended Complaint under Rule 12(b)(6) (ECF Nos. 13, 29)[2] and Plaintiff filed an opposition (ECF Nos. 32, 33). The motion is now fully briefed and ready for disposition.

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations. *Bell Atlantic v. Twombley*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculation level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the

---

[2] Defendants filed a Renewed Notice of Motion (ECF No. 29), renewing their previously filed Motion to Dismiss (ECF No. 13).

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a "probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]-'that the pleader is entitled to relief.'" *Id.* at 679. (quoting Fed. R. Civ. P. 8(a)(2)). The pleadings of *pro se* plaintiffs are liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must alleged sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III. DECISION

Moving Defendants argue Plaintiff's claims against them should be dismissed. The Court addresses the claims in turn.

### A. Official Capacity Claims under Section 1983 and New Jersey Civil Rights Act

Defendants seek to dismiss Plaintiff's Amended Complaint against them in their official capacities. (*See* ECF No. 13-3 at 15–17.) Defendants assert Plaintiff's claims against them in their official capacities must be dismissed because Defendants are not "persons" subject to liability under § 1983 or New Jersey Civil Rights Act ("NJCRA"). (*Id.*)

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Therefore, to obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. Nevertheless, a plaintiff may bring a § 1983 claim against a state actor in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* As the Supreme Court has explained:

> *Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.* at 27. "In determining whether [a plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts] . . . look to the complaints and the course of proceedings." *Hafer v. Melo*, 912 F.2d at 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (internal citations and quotations omitted). In addition, although a state actor acting in his or her official capacity cannot be sued for money damages under § 1983, an exception to that general rule permits a plaintiff to seek injunctive relief against state actors in their official capacities. *See Will*, 491 U.S. at 92.

Here, the Complaint raises claims under § 1983 and NJCRA against Defendants in their official capacity. (*See* ECF No. 1-1 at 15.) Plaintiff may not proceed against Defendants in their official capacity for monetary damages. Therefore, the Court will grant the motion to dismiss the § 1983 and NJCRA claims against Defendants in their official capacity for monetary damages.[3]

Although Plaintiff seeks declaratory and injunctive relief against Defendants, Defendants also move to dismiss Plaintiff's claims against them for injunctive and declaratory relief. (ECF No. 13-3 at 26-30.) "[A] state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 159–160 (1908). Here, however, the Court dismisses without prejudice Plaintiff's request (1) that Defendants declare Plaintiff's rights were violated under the Constitution and NJCRA and (2) that the Court issue an injunction that Defendants remove all "administrative action memorandums" from Plaintiff's classification file for lack of standing because he has not plead any facts suggesting that is likely to suffer a future

[3] The NJCRA is "intended to provide New Jersey citizens with a state analogue to Section [] 1983 actions." *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018). For this reason, the Court's analysis regarding Section 1983 applies with equal force to Plaintiff's claims under the NJCRA.

injury of the same type or that there is any ongoing constitutional violation. *See e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (explaining that "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers"). Accordingly, the Motion to Dismiss is **GRANTED** as to Plaintiff's claims against Defendants in their official capacity and as to prospective injunctive and declaratory relief.

**B. Due Process Violations-Defendants Kuhn and McGill**

In addition to raising claims against Defendants Kuhn and McGill in their official capacities, Plaintiff raises his procedural and substantive due process claims against Defendants Kuhn and McGill in their individual capacities. (ECF No. 7 at 3.) Defendants move for dismissal of the claims against Defendants Kuhn and McGill in their individual capacity, arguing Plaintiff fails to allege they were personally involved in the alleged constitutional violations and they may not be held vicariously liable. (ECF No. 13-3 at 17-20.)

Personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Therefore, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882

F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Plaintiff seeks to hold Defendant Kuhn, as Commissioner of DOC, and Defendant McGill, as Administrator of Northern State Prison responsible for Defendant Sim's alleged constitutional violations regarding Plaintiff's due process rights. First, Plaintiff does not assert a claim that Defendants Kuhn and McGill are liable based on any policy, practice, or custom at Northern State Prison. Next, Plaintiff has not alleged any facts showing Defendants Kuhn and McGill were personally involved in, had prior knowledge of, or acquiesced in Defendant Sim's actions. In fact, the Amended Complaint is devoid of any allegations specifically against Defendant Kuhn.

As to Defendant McGill, Plaintiff alleges only that Defendant McGill responded to one of the Plaintiff's appeals stating Plaintiff's "appeal ha[d] been received and the response noted was deemed to be appropriate." (ECF No. 7 at 8.) While Plaintiff alleges Defendant McGill responded to his appeal, that type of allegation—*i.e.*, a claim that grievances were sent to a warden or other administrator—are generally insufficient to establish supervisory liability, absent a plausible allegation that the supervisor had contemporaneous knowledge of the incident and either directed or acquiesced in it. *See, e.g., Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (affirming dismissal of claims against warden and others, based on allegation they had received grievances; "Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."); *Butler v. Penchishen*, No. 22-CV-3252, 2022 WL 4473590, at *4 (E.D. Pa. Sept. 26, 2022) ("To the extent Butler is attempting

to connect any of the individual Defendants to these events based on his allegation that he either filed grievances or wrote them letters, such allegations are unclear and, in any event, would not establish the requisite personal involvement to establish liability."). Plaintiff offers no facts to show that Defendants Kuhn or McGill had contemporaneous knowledge or participated in Plaintiff's alleged due process violations. According, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's individual capacity claims against Defendants Kuhn and McGill.

**C. Procedural Due Process - Defendant Sim**

Defendants next move for the dismissal of Plaintiff's procedural due process claim against Defendant Sim, arguing that Plaintiff had failed to exhaust his available state remedies. (ECF No. 13-3 at 21-23.) They argue that the New Jersey Rules of Court provide the Appellate Division with jurisdiction over review of agency actions. (*Id.* at 22.) Defendants contend Plaintiff appealed to the Appellate Division, and that appeal is still pending. (*Id.* at 23.)

The Prison Litigation Reform Act ("PLRA"), codified as 42 U.S.C. § 1997e, precludes a prisoner from contesting prison conditions in federal court until he has exhausted "all avenues of relief available to [him] within their prison's inmate grievance system." *Spruill v. Gillis*, 372 F.3d 218, 227 (3d Cir. 2004). Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While the PLRA requires that a plaintiff exhaust available administrative remedies before bringing a § 1983 action, plaintiff is not required to exhaust available state judicial remedies. *See Jenkins v. Morton*, 148 F.3d 257 (3d. Cir. 1998) (finding a state inmate was not required to exhaust state judicial remedies in challenging sanctions imposed as result of disciplinary proceedings to comply with requirements, under the PLRA, that

inmates exhaust "administrative remedies" before bringing § 1983 action or other action under federal law.)

Here, Defendants argue that Plaintiff's procedural due process claim against Defendant Sims must be dismissed because he failed to exhaust his judicial remedies. Specifically, Defendants argue Plaintiff has failed to complete his appeal in the New Jersey Appellate Division prior to filing his § 1983 action. However, under the PLRA, Plaintiff is only required to exhaust his available administrative remedies, not available state judicial remedies, before bringing his § 1983 claims. *See Jenkins*, 148 F.3d 257. Defendants do not argue that Plaintiff has failed to exhaust his available administrative remedies and Plaintiff submits that he repeatedly inquires, grievances, and appeals regarding this matter. Therefore, Defendants Motion to Dismiss is **DENIED** as to as to Plaintiff's procedural due process claim against Defendant Sims.

**D. Substantive Due Process - Defendant Sim**

In their final argument, Defendants move for dismissal of Plaintiff's substantive due process claim against Defendant Sim. (ECF No. 13-3 at 23–26.) Defendants argue that Plaintiff receiving disciplinary sanctions through an administrative action letter issued by Defendant Sim, rather than through a disciplinary hearing process does not sufficiently "shock the conscious" to constitute a substantive due process violation. (*See id.*)

"The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To plead a plausible substantive due process claim, a plaintiff must allege conduct that is "arbitrary[] or conscious shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Collura v. Disciplinary Bd. of Supreme Ct. of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) ("To state a substantive due

process claim, the plaintiff must allege that he was deprived of a fundamental right, and that the government conduct at issue was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (citations and internal quotation marks omitted)), *aff'd*, 569 F. App'x 114 (3d Cir. 2014).

As noted above, Defendant Sim sanctioned Plaintiff to 45-days loss of institutional kiosk, telephone, Jpay player (Tablet), and congregate time out of the cell by. (ECF No. 7 at 4.) However, these inconveniences do not involve "atypical and significant hardships" as compared to the ordinary incidents of prison life, and prisoners generally have no recognized liberty interest in the type of privileges Plaintiff claims to have lost. *See McDowell v. Litz*, 419 F. App'x 149, 152 (3d Cir. 2011) (dismissing due process claim of inmate who claimed that, as a result of the disciplinary proceeding, he was sanctioned to a 90–day suspension of his telephone privileges and the loss of his institutional employment, as inmate had no protected interest in either one); *Gonzelez v. Zickenfoose*, Civ. No. 13-cv-2716, 2014 WL 257850, at *2 (M.D. Pa. Jan. 23, 2014) (finding the temporary loss of commissary, visitation and email privileges do not "implicate a protected liberty interest as they do not result in any atypical or significant hardships in relation to the ordinary incidents of prison life"). The due process clause does not provide protection against the imposition of discipline, including the loss of various privileges, insofar as these other forms of discipline do not "impose [] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002) (citing *Hewitt v. Helms*, 459 U.S. 460, 484 (1983)). As Plaintiff's loss of privileges did not present an atypical and significant hardship on Plaintiff, Defendant Sim's imposition of the sanctions without a hearing does not "shock the conscience." Accordingly, Plaintiff has not presented facts that state a substantive due

process claim against Defendant Sim. Therefore, Defendants' motion to dismiss is **GRANTED** as to this claim and Plaintiff's substantive due process claims against Defendant Sim is dismissed.

## IV. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Plaintiff's (1) official capacity claims against Defendants Kuhn, McGill, and Sim are dismissed with prejudice, (2) injunctive and declaratory relief claims are dismissed with prejudice, (3) procedural and substantive due process claims against Defendant Kuhn and McGill are dismissed without prejudice, and (4) substantive due process claim against Defendant Sim is dismissed without prejudice. Plaintiff procedural due process claim against Defendant Sim remains.

An appropriate order accompanies this Opinion.

Date: October 16, 2024

***/s/Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**United States District Judge**